BECK, Judge:
We granted en banc review in this case in order to clarify when orders relating to child custody will be deemed final and therefore ripe for appeal. We hold that a custody order will be considered final and appealable only after the trial court has completed its hearings on the merits and the resultant order resolves the pending custody claims between the parties.
In the instant case we conclude that the order on appeal is interlocutory. The order allowed appellee, the children’s father, periods of partial custody of his two sons pending completion of hearings on the issues of primary and partial custody. Since the court contemplated an additional hearing on the ultimate issues in the case, the appeal is premature. On September 12, 1995, we entered an order without opinion quashing the appeal. This opinion will explain the reasons for our order.

FACTUAL AND PROCEDURAL HISTORY

This is a dispute regarding the custody of two minor children, T.B., bom December 6, 1977,[1] and A.B., bom November 30, 1983. The parents of the children, M.M.B. (“mother”) and G.B. (“father”), separated in May, 1994.
The numerous petitions filed by the parties to this action demonstrate a custody war fought on the battlefield of the court. In this court’s view, the parties and the children would be better served by resolving this family matter without judicial intervention.
On May 17, 1994, father filed a complaint in divorce including a claim for partial custody and visitation. On May 31, 1994, father filed a Petition for a Temporary Order of Partial Custody and Visitation pursuant to Pa.R.C.P. 1910.15. On July 5, 1994, he filed a Supplemental Petition for Interim Order of Partial Custody and Visitation averring that he had been precluded from any contact with the two children. On July 20, 1994, a hearing was held on father’s partial custody petition. The issue of partial custody was deferred until psychological evaluations of both parents and the children were concluded.
On November 8, 1994, father filed a Special Petition seeking an interim order to permit him partial custody of the children over the upcoming holidays. On November 15, *716 1994, a hearing on this petition was held. The court entered an order directing the parties to submit plans for participation in counseling and for implementation of interim partial custody, but did not explicitly decide whether father would be awarded temporary partial custody over the upcoming holidays. The court stated that its goal was to implement temporary partial custody for father prior to February 1,1995.
On January 24, 1995, father again filed a Petition for Temporary Partial Custody and Visitation. A hearing was held on January 27, 1995, on this petition as well as the plans for counseling and partial custody submitted by the parties pursuant to the court’s November 18 order. At the conclusion of the hearing, the court ordered that contact between father and the children be limited to counseling sessions for the time being, but that by March 18, 1995, father should have partial custody from 10 a.m. Saturday until 7:00 p.m. Sunday. The court also scheduled a hearing on the claims for “permanent” custody and partial custody and visitation which were initially asserted in the father’s divorce complaint.[2]
On March 17, 1995, the court commenced the custody hearing based on the divorce complaint. The court was unable to hear all witnesses on the issue of “permanent” custody and partial custody and therefore scheduled a further hearing for May 8, 1995. At the conclusion of the day’s proceedings, however, the court entered an order modifying its previous order for overnight partial custody. The revised order limited the father’s partial custody to five hours on Saturday at a resort near Mother’s home.[3]
Pursuant to the March 17 order, the father visited with his sons. Shortly thereafter, on March 22,1995, counsel for the children filed an Emergency Petition for Suspension of Visitation, asserting that the visit had been unsuccessful and that further visits would not be in the boys’ best interests. On March 24, 1995, father’s counsel transmitted a Motion for Entry of Partial Custody to the court via telefacsimile. That motion was filed with the trial court Prothonotary on March 27, 1995.
On March 24,1995, the trial court entered another order for partial custody. Referring to its March 17 order, but without mentioning either the Emergency Petition filed by counsel for the children or father’s Motion for Entry of Partial Custody, the court’s order granted father partial custody and visitation every Saturday from 10:00 a.m. to 6:00 p.m. beginning April 1, 1995 and continuing until further order of court.[4] It is this *717 March 24 order that is challenged in the instant appeal.[5]
On March 30,1995, mother filed a Petition to Suspend Partial Custody and Visitation which was scheduled for hearing on May 1, 1995. On April 6,1995, mother filed a Notice of Appeal on behalf of herself and the two boys from the court’s March 24 order. An oral motion for stay of the March 24 order pending appeal was denied on that same date.[6]
On April 18, 1995, father filed with this court an application to quash mother’s appeal, asserting that the trial court’s March 24 order was not a final order for partial custody and was merely one in a series of interim orders directing contact between father and the boys until further hearings enabled the court to make a final determination of the parties’ primary and partial custody rights. We denied this application without prejudice to renew the jurisdictional argument before the court en banc. Both parties have briefed and argued to us the issue of the finality of the trial court’s March 24 order.

DISCUSSION

Few legal principles are as well settled as that an appeal properly Ies only from a final order unless otherwise permitted by rule or statute. See, e.g., Fried v. Fried, 509 Pa. 89, 501 A.2d 211, 213 (1985); Parker v. MacDonald, 344 Pa.Super. 552, 496 A.2d 1244 (1985). Pennsylvania Rule of Appelate Procedure 341 defines a final order as:
any order that:
(1) disposes of all claims or of all parties; or
(2) any order that is expressly defined as a final order by statute; or
(3) any order entered as a final order pursuant to subsection (c) of this rule [allowing the trial court, in multi-claim or multiparty actions, to enter a final order as to one or more but fewer than all of the claims or parties upon an express finding that an immediate appeal would faeiltate resolution of the entire case].[7]
Pa.RAP. 341(b), 42 Pa.C.S. This rule, as amended by the Pennsylvania Supreme Court in 1992, has made it clear that an order is not final and appealable merely because it decides one issue of importance to the parties. Rather, for an order to be final and ripe for appeal, it must resolve all pending issues and constitute a complete disposition of all claims raised by all parties.
The matter before us, like many custody actions, was initiated by inclusion of a count for custody in father’s complaint in divorce. A strict reading of Rule 341 might therefore suggest that the trial court’s determination of custody will not be final until the divorce action and all other ancillary claims have been resolved. However, the language of Rule 341 does not explcitly address the rule’s applcabilty to custody matters, which have traditionally been subject to procedures differing from those in other civil actions. Moreover, the official note accompanying the 1992 revision of Rule 341 does not list orders for custody among the types of matters affected by adoption of the rule. Note, Pa. R.A.P. 341, 42 Pa.C.S. Considering the pol-cies underlying custody determinations, it is unlikely that the Supreme Court in promulgating revised Rule 341 intended to change existing law regarding the appealabilty of orders in custody matters. We conclude that the strict language of the rule does not apply to bar immediate review of a trial court’s final custody determination.[8]
*718 In support of our conclusion, we note that a custody action may not only be brought as a count in a divorce action, it may also be initiated in a separate complaint independent of a divorce action. See 23 Pa.C.S. § 3104; Pa.R.C.P. 1915.3. An independently asserted claim for custody would become final after the trial court decided the ultimate issue relating to custody. The principles established to define finality for custody orders must be the same whether the action is brought as a count in a divorce complaint or in a separate custody complaint. Therefore, Rule 341 cannot appropriately be applied to a custody action brought as a count within the wider context of a divorce action.
There are important policy reasons to analyze the finality of custody orders differently from other civil court orders. Child custody orders are treated differently because they have significant, important and immediate impact upon the welfare of children. The state has a singular interest in families, and especially in children. Therefore, custody procedures have attempted to be especially responsive to the needs of families and children. A principal part of that responsiveness has been the prompt and comprehensive review of custody determinations.[9]
In order to arrive at a workable standard for appealability, we review the case law as well as the underlying principles of finality in child custody matters. In doing so, we study not only the language of the particular order under review, but also the point in the proceedings at which the order is entered and the intended effect of the order upon further proceedings between the parties.
In Parker v. MacDonald, supra, we examined an order, entered after a full hearing on all issues relevant to custody, which directed a schedule for shared custody by the parties and stated that the court would entertain an application for review of those arrangements several months in the future in order to consider arrangements for the child’s enrollment in school. We held that the language making the order open to further review did not defeat the finality or appealability of the order because the order completely disposed of the parties’ rights to custody unless and until a petition for re-examination of custody was filed by one of the parties. We concluded that the language of the trial court’s order merely made explicit what is always implicit in a custody order — the availability of modification upon a proper showing by the parties — and hence that the finality of the order, which otherwise constituted a complete resolution of the parties’ dispute, was not vitiated. Id. at 558, 496 A.2d at 1247.
Similarly, in Cady v. Weber, 317 Pa.Super. 481, 464 A.2d 423 (1983), this court found final an order which resolved the ultimate' issue of custody in an action between a mother and her parents. The order was entered after the completion of hearings on the issues relevant to custody and directed that custody of the children, who had resided with the maternal grandparents for several years, should be transferred to their mother. However, the order also directed that the transfer of custody be delayed pending further studies of the children in both parties’ homes and the court’s formulation of a plan for implementation of the transfer of custody. We held that the order in question finally resolved the ultimate issue between the parties, namely, whether custody should be transferred to the children’s mother. We noted that the further proceedings contemplated by the court were not designed to allow reconsideration of its determination, but rather to implement that determination in a way that would minimize the traumatic impact of the change in custody upon the children. Ac *719 cordingly, we concluded that the fact that details of implementation of the order remained to be worked out did not yitiate the finality of the court’s determination. Id. at 487, 464 A.2d at 426.[10]
In contrast, in Williams v. Thornton, 395 Pa.Super. 276, 577 A.2d 215 (1990), we examined an order entered in response to an emergency petition for custody filed during the pendency of a father’s petition to vacate a previous award of custody to a third party. The order determined the parties’ rights to primary and partial custody pending resolution of father’s petition to vacate custody and directed that the petition to vacate proceed through the normal pretrial and trial processes of the court. We held that the order was interlocutory and that the appeal should be quashed, noting that the order was entered prior to a full hearing on the ultimate custody issues and concluding that it was intended only to determine the parties’ relations during the pendency of the custody litigation, not to resolve the ultimate issues central to the parties’ dispute. Id. at 279, 577 A.2d at 217.
In Sawko v. Sawko, 425 Pa.Super. 450, 625 A.2d 692 (1993), we touched upon the issue of finality in a situation which presented a middle ground between Parker, supra, and Cady, supra on the one hand (where the order appealed from was entered after a full hearing and was intended to constitute a determination of the ultimate issues between the parties) and Williams, supra on the other (where the order appealed from was entered before a full hearing and was intended to determine the parties’ rights only during the pendency of the litigation).
Sawko involved an appeal from an order entered in response to a mother’s petition to modify an order entered five weeks earlier which awarded primary custody to her child’s father. The trial court conducted a hearing on the petition to modify at which both parties were permitted to put on as much evidence as they wished. At the conclusion of the hearing, the court entered an order which denied the petition to modify primary custody but increased the mother’s partial custody rights and scheduled an additional review hearing about four months in the future. This court noted, without elaboration, that the order was interlocutory and that mother’s appeal therefrom was premature and subject to quashal. Id. at 458, 625 A.2d at 696.
The reasons for this conclusion are clear. Although the court’s order was entered after a full hearing, it clearly was not intended to constitute a complete resolution of the issues pending between the parties. Unlike the order in Parker, supra, or Cady, supra, the trial court’s order did not completely resolve the issues raised by the parties unless and until further proceedings were initiated by a party. Eather, the Sawko court’s order, although declining to grant the ultimate relief sought by the petitioner-mother, made an adjustment in its previously ordered custody arrangement and scheduled a further review of the matter. By scheduling further review for a date certain rather than leaving it up to the parties to seek such *720 review, the trial court made it clear that the ultimate issues between the parties remained under consideration. The court’s order was merely intended, in light of the brief time period between its initial custody order and the petition for modification, to allow the court more time to study the effects of the ordered arrangement upon the child and to make a final determination at a later date as to whether a modification of primary custody would be in the child’s best interest.
Based on the case law cited above and the important policy concerns implicated in custody proceedings, we hold that a custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties.[11]’[12] We conclude that this holding will protect the child from the protraction of custody litigation through repetitive appeals while still allowing prompt and comprehensive review of custody determinations. It will also support judicial economy and efficiency and uphold the integrity of the trial court’s process in deciding custody matters. On the one hand, to permit piecemeal appeals subjects the child to the uncertainties of ongoing litigation. A custody proceeding, whether on the trial or the appellate level, threatens a child’s stability. On the other hand, a custody decision once finally made must be subject to review. Drawing a bright line by which finality may be determined will encourage judicial economy and efficiency by making it clear both to litigants and to trial courts when the appel *721 late process may properly be invoked. Our holding also serves to uphold the integrity of the trial process by not interfering with the trial court’s efforts to craft a final decision and by not permitting premature challenges to those efforts. In striking a balance between postponing and granting an appeal, we have attempted to serve primarily the best interests of the child.
Applying the rule of finality defined above to the instant case, it is clear that the trial court’s March 24 order is not final. The trial court’s order was entered before it had completed hearings on the merits. Although father had presented his evidence in support of his petition for partial custody, mother had not yet had the opportunity to put on her case in opposition to the petition. Moreover, at the time of entry of the March 24 order, the trial court had already scheduled a date for continuation of the hearings on partial custody.
Nor was the March 24 order intended to constitute a complete resolution of the ultimate issues between the parties. The order clearly stated that the periods of weekend partial custody were to continue only until further order of the court. Moreover, the order was entered pursuant to the court’s prior order of March 17, which indicated that temporary orders for visitation would be entered periodically until the scheduled hearing on May 8. Read in the context of the procedural history of this case, it is clear that the March 24 order was subject to further review at a date certain. It is also clear that the order was not intended to constitute a complete resolution of the parties’ dispute regarding partial custody. Rather, it was designed to order the parties’ relations during the pendency of the custody litigation and to allow the court to assess the effect of the interim visits upon the children and thus better determine their best interests in making its decision on the ultimate issues in the case. As the order in question was neither entered after the conclusion of all hearings in the matter nor intended to constitute a complete resolution of the ultimate issues between the parties, it is clearly interlocutory.
Appellants assert that even if the March 24 order is not final, it should be appealable as a collateral order under Rule of Appellate Procedure 313. Pa.R.A.P. 313, 42 Pa.C.S. Rule 313 is based upon long-standing Pennsylvania case law engendered by the decision of the United States Supreme Court in Cohen v. Beneficial Industrial Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). See Pugar v. Greco, 483 Pa. 68, 394 A.2d 542 (1978). It allows an appeal as of right from a collateral order of an administrative agency or lower court. Subsection (b) of the rule defines a collateral order as
an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.
Pa.R.A.P. 313(b), 42 Pa.C.S.
Appellants argue that the trial court’s March 24 order is a collateral order as defined by Rule 313. They assert that because previously ordered visits have been unsuccessful, such visits place the children at risk of psychological and possible physical harm. Based on the assertion of risk to the children’s welfare if further visits take place, appellants argue that the children’s right to avoid such risk is too important to be denied review, and that if review is postponed until final judgment, the children may be irreparably damaged.
We agree with appellants that the trial court’s order touched upon important rights of all parties — the children’s right to be protected from potentially harmful situations, the mother’s right to protect her children from contacts she perceives as harmful, and the father’s right not to be foreclosed from contact and communication with his children. However, appellants do no more than make a bald assertion that the trial court’s interim order for immediate partial custody dealt with a matter separable from and collateral to the main cause of action for partial custody. They do not demonstrate how this is so, nor do they cite any authority for the proposition that an interim order for partial custody is collateral to a pending action for custody.
In Plowman v. Plowman, 409 Pa.Super. 143, 597 A.2d 701 (1991), as part of our review of a trial court’s disposition of a father’s petition for modification of custody, *722 this court reviewed an earlier interim order denying father’s petition for a writ of ne exeat to prevent removal of his child from the state by its mother, who had primary custody under a prior agreed order. In response to the mother’s argument that we should not review the interim order because father should have sought immediate interlocutory review under the collateral order doctrine, we held that father’s arguments regarding the interim order were correctly raised in the appeal from the final order disposing of the petition for modification. The panel of this court reasoned that the earlier order was not appealable because, although the father’s right to contact with his child was extremely important, the order was not separable from and collateral to the main cause of action. Rather, we held, the issue of where the child should live during the pen-dency of the proceedings on the petition to modify was “intertwined with the issue of which parent should maintain custody over the minor child.” Id. at 149, 597 A.2d at 704.
Here, as in Plowman, supra, the interim order of which appellants seek review is one which is intertwined with the ultimate issue in the case — whether Father should be granted partial custody of his two sons. Such an order is an integral part of the trial court’s progress towards a decision of the ultimate issues in the case and thus cannot be viewed as either separable from or collateral to proceedings in the main cause of action. Accordingly, review of the interim order must await the entry of a final order disposing of Father’s petition for partial custody.[13]

CONCLUSION

After thorough review of the record in this case and careful consideration of the applicable law, we are compelled to conclude that the order under appeal is not a final order and that it is not an appealable collateral order. As the order does not fall within any category of orders otherwise made appeal-able by statute or rule, we have concluded that we have no jurisdiction to review it. 42 Pa.C.S. § 741 (superior court has jurisdiction of appeals from final orders of the courts of common pleas). Accordingly, we entered the order of September 12, 1995, quashing the appeal.
Appeal quashed.

. We note that after the entry of our order quashing this appeal, but prior to the filing of this opinion, the parties’ elder son, T.B., attained the age of 18. As a result, the trial court’s order no longer applies to him.

. Although the trial court used the term "permanent custody and visitation” to differentiate proceedings on Father’s primary petition for partial custody from proceedings on the parties’ various requests for emergency or interim relief, it is axiomatic that no custody order is permanent. All custody orders are subject to modification upon a showing that a change in current custody arrangements would be in the child’s best interest. Karis v. Karis, 518 Pa. 601, 544 A.2d 1328 (1988); Friedman v. Friedman, 224 Pa.Super. 530, 307 A.2d 292 (1973).

. The March 17 order provided:
NOW TO WIT, this 17th day of March, 1995, the court hereby modifies its order of January 27, 1995, as to Paragraph 4 in that on March 18, 1995, there will be five (5) hours of partial custody and visitation by [G.B.] with his two sons, [T.B. and A.B.] at the Shadow Brook Resort, Tunkhannock, Pennsylvania, beginning no later that [sic] 12:00 Noon on said date. The court will further make orders as to visitation to occur on a weekly or bi-weekly basis until the court hearing of May 8, 1995, at 9:00 A.M. The children are to be delivered to Shadow Brook Resort.

.The March 24 order provided:
NOW TO WIT, this 24th day of March, 1995, the Court having represented in the order of March 17, 1995, that it would make further orders as to visitation between the children and the father, the Court orders as follows:
[G.B.] shall have partial custody and visitation with his two minor children, [T.B. and A.B.], every Saturday from 10:00 A.M. until 6:00 P.M. with the young men being transported from their mother’s place of residence to the Big Boy Restaurant in Clarks Summit, Pennsylvania, and picked up at the same location by their father for the purposes of visitation. Subsequent to the visitation by the father he is to return them to the Big Boy Restaurant in Clarks Summit at which time the mother will regain physical custody.
We further order that [M.M.B] do no acts to dissuade the young men from acting appropriately with their father and in [sic] engaging in meaningful and rational visitation.
Said visitation is to begin on Saturday, April 1, 1995, and to continue thereafter until further order of this Court.

. The Emergency Petition filed by counsel for the children was withdrawn after this appeal was taken. The trial court never explicitly ruled upon father’s Motion for Entry of Partial Custody.

. A supersedeas was subsequently granted by this court on April 7, 1995.

. The provisions of subsections (b)(3) and (c) of Pa.R.A.P. 341, relating to multi-party or multi-claim litigation, are not applicable to this matter, which involves only father's claim for partial custody and visitation. Father’s requests for interim partial custody and visitation during the pendency of hearings on his initial petition for "permanent” partial custody and visitation did not constitute separate claims or causes of action.

.Although we decide the application of Rule 341 only to custody matters, our analysis may also be applicable to other types of domestic relations orders, such as child support orders, which have *718 traditionally been viewed as final even when entered in the context of a pending divorce action.

. Pennsylvania’s appellate courts have acknowledged that the finality of custody orders is analyzed differently from other civil orders.
[C]ustody orders are unique and never final. In re Custody of Pearce, 310 Pa.Super. 254, 456 A.2d 597 (1983). Child custody orders are temporary in nature and always subject to change if new circumstances affect the welfare of a child. Commonwealth ex rel. Beemer v. Beemer, 200 Pa.Super. 103, 188 A.2d 475 (1962). The Commonwealth has a duly of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights. Friedman v. Friedman, 224 Pa.Super. 530, 307 A.2d 292 (1973).
Parker v. MacDonald, supra at 558, 496 A.2d at 1247.

. This court’s decision in Belan v. Belan, 399 Pa.Super. 458, 582 A.2d 684 (1990) is completely consonant with Parker, supra and Cady, supra. In Belan, the parties had entered into a custody agreement which gave primary custody of the parties’ child to her mother, but provided that if the mother was unable to provide an appropriate home environment, custody of the child would be transferred to the father. Approximately two years later, the father filed a petition to modify custody, asserting that the child's mother was not providing a proper home environment. After a complete hearing on the claim for modification, the trial court entered an order directing that the provision of the agreement providing for transfer of custody to the father “temporarily be in force and effect.” Id. at 462 n. 2, 582 A.2d at 686 n. 2. The panel deciding Belan did not explicitly address the issue of the appealability of the order in light of its language suggesting that the transfer of custody might be temporary. However, in addressing the father-appellant’s argument that the court erred in including such language because the agreement intended the transfer of custody to be permanent, the panel found that the use of the word “temporarily” had no effect upon the order's effectiveness as a complete resolution of the parties’ dispute. Like the panel in Parker, supra, the Belan panel recognized that custody orders are, in a sense, always temporary and subject to modification upon an appropriate showing by the parties. The panel concluded that the trial court's order was intended to transfer custody to the father unless and until the trial court determined otherwise upon consideration of a petition by the parties and thus that it was no more temporary than any other custody order. This reasoning also clearly renders the order final and appealable under the holdings of Parker, supra, and Cady, supra.

. We emphasize that by requiring a complete resolution of pending claims, we refer to a resolution of the core substantive issues underlying the parties’ custody dispute. The fact that details regarding implementation of the court’s custody order remain to be worked out, as in Cady v. Weber, supra, or that subsidiary interim petitions of the parties may not explicitly have been disposed of will not render a custody order interlocutory so long as the order decides the ultimate substantive question — the parties’ respective rights to custody, partial custody or visitation unless and until further proceedings are initiated by petition of one of the parties.

. In two custody decisions by panels of this court, the panel opinions include language which could be interpreted as suggesting that interim orders entered prior to the final custody orders under appeal could or should have been appealed.
In Boylan v. Boylan, 395 Pa.Super. 280, 577 A.2d 218 (1990), the panel reviewed a final order awarding primary custody to the mother of the parties' four children. Among the arguments raised by the appellant-father was the claim that he was denied due process of law when the mother was awarded temporary custody of the children based on an emergency petition filed during the pendency of the main custody proceedings. The Boylan panel declined to address the merits of the emergency petition because the appeal was taken from the final order. However, the panel did not make clear whether it did so on the basis that the temporary custody order was independently appealable and the father’s challenge to the order was therefore waived or on the basis that the father’s challenge to the award of temporary custody was rendered moot by the subsequent entry of a final custody order after full hearings. To the extent that the opinion can be read to support the former proposition, we overrule it because the temporary custody order clearly did not meet the standards of finality established in our case law and summarized in our decision today.
Similarly, in M.C. v. R.W., 398 Pa.Super. 183, 580 A.2d 1124 (1990), a panel of this court reviewed a final order denying a mother’s emergency petition for modification of custody based on allegations of abuse by the child's father, who had partial custody rights. In response to the mother’s petition, the trial court had entered an emergency order restricting the father to supervised visitation with the child pending further hearings on the petition to modify custody. This emergency order was later vacated based upon a finding by Children and Youth Services that the allegations of abuse were unfounded, and a further hearing was scheduled. Mother subsequently filed a second emergency petition for modification of custody based on new allegations of abuse, which again prompted a temporary vacation of the father's partial visitation rights pending further hearings. After hearings, the trial court entered the final order denying the mother’s petition and restoring the father’s partial visitation rights from which the appeal was taken. In recounting the procedural history of the appeal before them, the panel of this court noted, without further comment, that the mother had not appealed the prior order which vacated the first emergency order for supervised visitation and scheduled further hearings in the matter. The panel did not expressly conclude that such order was final or appealable, and we must conclude that under the case law we have discussed above it clearly was neither. Thus to the extent that an implication could be drawn from the panel's opinion that the first order restoring the father’s partial custody rights was final and appealable, it is overruled.

. We recognize that in Walker v. Walker, 362 Pa.Super. 75, 79 n. 4, 523 A.2d 782, 784 n. 4 (1987), we held that an interim order directing an adult mentally retarded woman to comply with an established schedule for visitation with her mother during the pendency of proceedings pursuant to the mother’s petition for contempt against the woman’s father was immediately ap-pealable under the collateral order doctrine. There, however, the question which we found separable from and collateral to the main cause of action was whether a mentally retarded adult had the right to make her own decisions about visitation rather than being bound by an order entered in a custody action between her parents. Because appellant, the adult subject of the order, was not a named party to the original action for contempt but was nevertheless compelled to comply with the court's order, her claim was clearly collateral to and separable from the main cause of action, which involved the question of her father's compliance with previous court orders. Our decision in Walker is thus distinguishable from that in Plowman, supra and from that we reach today.