J-A31017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHANNON GORHAM | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOSEPH MATTHEW GORHAM | |
| Appellee | No. 409 MDA 2015 |

Appeal from the Order Entered January 21, 2015
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2387-2013

BEFORE: PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED FEBRUARY 09, 2016**

Shannon Gorham (Mother) appeals from the trial court's order requiring her to pay $11,065.15 in expert witness fees in the parties' underlying custody matter. After careful review, we affirm.

On February 22, 2013, Mother instituted a divorce action against Joseph Matthew Gorham (Father), seeking among other things, shared legal and primary physical custody of the parties' three minor children.

After a pre-trial conference, the trial court ordered Mother to submit to an evaluation by Father's expert, Ken Lewis, Ph.D., and for the costs to be paid by Father. Dispositional Order, 9/6/13. The court also ordered that the parties' children submit to an evaluation by Dr. Lewis and that, if Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

wished to have Father evaluated, she identify an expert within 30 days and pay for the costs of that evaluation. *Id.*

On November 5, 2013, Father filed a petition for contempt/motion to preclude Mother's expert witness testimony; two days later Mother filed a motion to continue the custody trial. On November 14, 2013, the court entered an order denying Mother's motion to continue trial and granting Father's motion to preclude Mother from presenting any expert testimony. Specifically, the order precluded Mother from "presenting any testimony from her expert, Dr. Arnold Scheinvold, Ph.D., or any other expert." Order, 11/14/13, at (b).[1]

Prior to commencing the custody trial on November 19, 2013, the court heard testimony from Dr. Lewis about his qualifications and the fact that Mother never complied with the court's prior order requiring her and the children to submit to an evaluation by Dr. Lewis. During the proceedings, the court decided to "assess costs at the conclusion [of the matter]." N.T. Proceedings, 11/19/13, at 39. Moreover, the court heard testimony that while Mother had identified her own expert and scheduled an initial consultation with him, the consultation was not scheduled to occur until November 27th – eight days after the scheduled custody trial. *Id.* at 40.

On November 20, 2013, the trial court issued an order certifying Dr.

---

[1] The order also required that Dr. Lewis's report be submitted to Mother's attorney on or before November 15, 2013. Order, 11/14/13, at (b).

- 2 -

Lewis as an expert in custody matters, requiring Mother and Father to follow all directives and requests of Dr. Lewis, permitting Mother to obtain a report by Dr. Sheinvold provided that Dr. Sheinvold contact and speak with Dr. Lewis about the custody evaluation, and directing that Dr. Sheinvold complete any and all evaluations and interviews, including a complete report, in advance of trial. Order, 11/20/13, at 1-2. That order also specifically stated that Mother would be responsible for all of Dr. Sheinvold's costs and that Father shall be paid $800/day to travel to Dr. Sheinvold's office. *Id.* at 2. Notably, the court's order also states that "**[t]he cost for Dr. Lewis shall be fully and completely allocated by this Court at the conclusion of trial**." *Id.* (emphasis added).[2]

A custody trial commenced in November 2013 and continued with additional testimony and evidence being received by the court on January 15, 2014, March 31, 2014, and April 16, 2014. The parties were ordered to file post-trial briefs and proposed findings of fact and conclusions of law on or before May 28, 2014. On June 26, 2014, the court entered its final custody order that maintained the *status quo* of a prior custody order which included shared legal and physical custody, and added the condition that

---

[2] While Father and the court would have us find that Mother waived any objection to the court's November 20, 2013 order stating that the cost for Dr. Lewis would be allocated by the court at the conclusion of trial, we disagree with this contention. Because the parties' custody claims had not been completely resolved at that time, any appeal would have been interlocutory. *G.B. v. M.M.B.*, 670 A.2d 714 (Pa. Super. 1996) (en banc).

Mother's week of physical custody of the children coincide with her scheduled physical custody week for her child from a prior marriage, so as to promote step-sibling bonds. A holiday, birthday and vacation schedule was also confirmed.

On December 4, 2014, the court entered an order noting that Father, in compliance with its September 2013 order, had compensated Dr. Lewis for his services rendered through November 20, 2013, in the amount of $7,839.25. Order, 12/4/14. The court directed Dr. Lewis to compile his total bill for services beyond the amount paid by Father and to present his calculation to the court and parties five days before a scheduled fee hearing. *Id.*

On January 12, 2015, the court held the scheduled hearing on the issue of Dr. Lewis's expert fees; Dr. Lewis participated in the hearing by phone. N.T. Hearing, 1/12/15, at 2. Dr. Lewis gave the court and parties a general outline regarding his bills for services rendered from November 21, 2013 until the conclusion of trial. Dr. Lewis stated that, at the time of the hearing, the outstanding balance for his fees was $12,790.20. *Id.* at 7. At the hearing, Father's attorney examined Dr. Lewis on the issue of Mother's non-cooperative nature with regard to her evaluation prior to trial. Dr. Lewis also confirmed that up to November 21, 2013, Father had paid $7,839.25 in services rendered by Dr. Lewis. *Id.* at 11.

At the conclusion of the hearing and at the direction of the trial judge, the parties spoke with Dr. Lewis privately to determine the amounts due

from Mother and Father based on various dates of services he rendered to the parties from November 21st until the conclusion of trial. The parties submitted the relevant bills/paperwork to the court for its final decision. On January 21, 2015, the court issued an order assessing Mother $11,065.15 and Father $1,725.05 in expert fees.[3]

In coming to its decision, the court factored in Father's payments to Dr. Lewis, totaling $7,839.25, made prior to November 21, 2013. Ultimately, the court made Mother responsible for 50% of that amount, or $3,919.63. Then the court added the amount of the remaining services that were attributed to Mother, which totaled $7,145.52. Adding these two figures together, the court assessed Mother a total of $11,065.15. To arrive at Father's final figure, the court credited him half of his pre-November 20th payment, or $3,919.63, and subtracted that from the amount of the remaining services attributed to Father, which totaled $5,644.40, for a final total of $1,725.05.

Essentially, the trial court accepted Dr. Lewis' recommendation with regard to which costs were attributable to Mother and Father and then split the remaining costs 50/50 between the parties. Mother timely appeals from that fee order.

---

[3] Dr. Lewis attributed $1,730.60 to Father for his services and $3,223.02 to Mother for his services. Dr. Lewis left the remaining $7,845.60, which encompassed the expert report and the days of trial, to be allocated between the parties by the court.

On appeal, Mother raises the following issues for our consideration:

(1)   Whether the trial court's Order, holding that the Appellant/Mother must pay the Appellee's expert witness fee "within thirty (30) days from the date of this Order," is immediately appealable.

(2)   Whether the trial court's January 21, 2015 Order was clearly erroneous and constituted plain error?

(3)   Whether the trial court's January 21, 2015 Order constituted an abuse of discretion?

Before reaching the merits of Mother's claims, we must first determine whether this court has jurisdiction to entertain the instant appeal. Specifically, the question is whether the order from which the appeal is taken is final for purposes of invoking our appellate jurisdiction. Mother asserts that the order is final, and, if it is not final, that it is appealable under Pa.R.A.P. 311 (interlocutory appeals as of right). We find that the order is final.

Generally, an appeal as of right will only lie from a final order. Pa.R.A.P. 341(a). A final order is defined as one which "disposes of all claims and of all parties; or is expressly defined as a final order by statute; or is entered as a final order pursuant to subdivision (c) of this rule." Pa.R.A.P. 341(b).

A custody action may not only be brought as a count in a divorce action, it may also be initiated in a separate complaint independent of a divorce action. 23 Pa.C.S. § 3104. The principles established to define finality for custody orders are the same whether the action is brought as a

count in a divorce complaint or in a separate custody complaint. A custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties. *G.B.*, *supra* at 721. The term requiring a complete resolution of pending claims refers to a resolution of the core substantive issues underlying the parties' custody dispute. *Id.* at 721 n.11.

Instantly, the June 26, 2014 order was entered after the court completed its custody hearings and resolved the core substantive issues underlying the parties' custody dispute. *G.B.*, *supra*. Therefore, we find that the instant order is final and appealable.

Having determined that the order from which Mother appeals is ripe for our review, we will turn to the merits of her claims. First, we note that we review a trial court's allocation of expert fees for an abuse of discretion. *See Pavex, Inc. v. York Fed. Sav. & Loan Ass'n*, 716 A.2d 640, 647 (Pa. Super. 1998).

Pursuant to Pa.R.C.P. 1915.8:

The court may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts. The order, which shall be substantially in the form set forth in Rule 1915.18, may be made upon the court's own motion, upon the motion of a party with reasonable notice to the person to be examined, or by agreement of the parties. The order shall specify the place, manner, conditions and scope of the examination and the person or persons by whom it shall be made and to whom distributed. In entering an order directing

an evaluation pursuant to this rule, the court shall consider all appropriate factors, including the following, if applicable:

(1) **the allocation of the costs**, including insurance coverage, if any, attendant to the undertaking of the evaluation and preparation of the resultant report and court testimony of any appointed expert[.]

Pa.R.C.P. 1915.8(1) (emphasis added). The Comment to Rule 1915.8 explains that the proposed revisions to the Rule were "intended to afford the trial court and the parties a more flexible and case-sensitive means of determining the scope and parameters of a physical and/or mental examination, including deadlines, **costs**, underlying data, and access." **See** Explanatory Comment to Rule 1915.8 (2007) (emphasis added).

A review of the record makes it evident that Mother was the driving force behind the custody trial date being continued several times. She failed to have the required expert evaluations completed in a timely manner before the first scheduled trial date, cancelling a scheduled evaluation on the eve of her appointment with Dr. Lewis. **See** Letter from Ken Lewis, Ph.D, 10/30/13. Due to eight unsuccessful attempts by Dr. Lewis to schedule evaluations with Mother and her children or have her complete required paperwork prior to trial, Dr. Lewis was unable to complete any comprehensive custody evaluations or interviews. N.T. Proceedings, 11/19/13, at 19-26. Moreover, Mother's failure to move forward with requesting that an evaluation of Father be completed by her own expert is another reason why trial had to be continued.

Mother's non-compliant conduct with regard to the court's September 2013 order may have, in fact, protracted Dr. Lewis's services; at a minimum it led to several trial continuances. Therefore, these actions may have indirectly increased Dr. Lewis's expert's fees. Under such circumstances, it is reasonable that Mother bear the brunt of those expenses. We find that the same holds true with the court's decision to make Mother responsible for half of Dr. Lewis's pre-November 20th fees, which had been paid in full by Father in compliance with the court's September 6, 2013 order.

Mother does not cite to any relevant statute or case to support her claim that the court's fee order is clearly erroneous or an abuse of discretion. As Rule 1915.8 indicates, the court shall consider all appropriate factors, which includes the allocation of costs, when ordering an expert evaluation in custody matters. Pa.R.C.P. 1915.8(a)(1). Additionally, the court may also consider the fact that a party refused to comply with a Rule 1915.8(a) expert order; in extreme cases it can result in a finding of contempt. **Id.** at (c).

Under the circumstances, we do not find that the court abused its discretion in its allocation of expert fees,[4] **Pavex, Inc.**, **supra**, where

---

[4] Although it may appear that the court's allocation of costs between Mother and Father is significantly disproportionate, when broken down it is not actually so disparate. Due to the $3,919.63 credit that Father received from his full pre-November 20th payments to Dr. Lewis, Mother's total fee payments were increased by that same amount. Notwithstanding this
*(Footnote Continued Next Page)*

Mother failed to comply with court-ordered deadlines for expert evaluations which led to the unnecessary protraction of a bitter custody dispute.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2016

*(Footnote Continued)* ───────

reallocation, Mother is only paying at total of $1,500.85 more than Father in fees.